[Civ. No. 36277. Second Dist., Div. Two. Aug. 20, 1970.]

Estate of RICHARD COLYEAR, Deceased.
RICHARD CALHOUN COLYEAR, as Trustee, etc.,
Petitioner and Respondent, v.
MARGARET A. COLYEAR HALVORSON, Objector and Appellant;
LAURIE ELLEN PATRICK, a Minor, etc., et al.,
Claimants and Respondents.

COUNSEL

Belcher, Henzie & Biegenzahn and Henry O. Wackerbarth for Objector and Appellant.

Gibson, Dunn & Crutcher, Frank L. Mallory and Fred F. Gregory for Petitioner and Respondent.

Stephens, Jones, La Fever & Smith and Ronald L. Trevithick for Claimants and Respondents.

OPINION

**HERNDON, J.**—Margaret Colyear Halvorson, one of the income beneficiaries of a testamentary trust provided for in the will of her deceased husband, Richard Curtis Colyear, appeals from an order of the trial court settling the third account current of the successor trustee and allowing trustee's fees and attorneys' fees. Appellant contends that a portion of the trustee's fees and attorneys' fees allowed should have been charged to corpus rather than to income, since a substantial part of the services for which such fees were awarded must be classified as extraordinary.

Respondent, Byron O. Smith, who was appointed guardian ad litem by the trial court to represent the minor beneficiaries, minor contingent beneficiaries and the class of persons consisting of unborn contingent beneficiaries, has taken the position both in the court below and in this court that all of said allowances were correctly charged to income. The successor trustee, Richard Calhoun Colyear, has not taken a position on the issue presented by this appeal, since he is personally affected both as an income beneficiary and as a remainderman.

Richard Curtis Colyear died testate on January 6, 1961, leaving a will dated January 30, 1953. The will directs that the testator's entire estate be distributed in trust and that during the continuance of the trust one-half of the net income be paid to his wife, Margaret Colyear,[1] appellant herein, and that the other one-half be divided among decedent's children or their issue. The will provides that the trust shall terminate upon the happening of either of the following contingencies: (1) upon the death of the wife provided the testator's youngest child had then reached the age of 25 years; or (2) the arrival of testator's youngest child at the age of 25 years, provided the wife had died prior to that time. Upon termination of the trust the remainder of the trust estate is to be distributed to the testator's children or their issue.

The will further provides that in the event that the one-half of the net income to be paid to appellant should be less than the sum of $1,000 per month the trustee is directed to pay out of the corpus of the trust estate such amount as may be necessary in increasing her monthly allowance to $1,000. The provisions of the will, pertinent to the allocation of expenses between income and corpus, read as follows:

"THIRD: . . . 2. Said Trustee shall collect and receive all income, interest, dividends, rents, issues and profits thereof, and shall pay therefrom all taxes, assessments, street improvement bonds, insurance premiums, costs of repairs and other necessary and proper expenses incurred in the management, care and preservation of said property and estate or in carrying out the terms of this trust, including a reasonable compensation for his services. . . .

"FOURTH: Said Trustee shall deduct any and all sums of money authorized to be deducted under the provisions of Subdivision 2 of said Section THIRD above from the income of said trust property and estate . . . ."

The will was duly admitted to probate and thereafter on November 7, 1962, the estate was distributed to the trustee. The terms of the trust as set forth in the decree of distribution are in language identical to that used

---

[1]Margaret Colyear has remarried and is now Margaret Colyear Halvorson.

in decedent's will. Fred Nolen was originally appointed trustee. Pursuant to the terms of the will and decree, Richard Calhoun Colyear was subsequently appointed successor trustee upon his attaining the age of 25.

Richard Colyear filed his first accounting as successor trustee on January 7, 1966, covering the period from June 15, 1964 through November 30, 1965. At that time he also petitioned the court for additional administrative powers. Certain of these powers were denied without prejudice to a petition for them at a future date and others were granted, including the power to "employ attorneys, accountants, investment counsel, agents, depositaries and employees and to pay the expense therefor from the trust estate."

Richard Colyear's third account current covering the period from December 1, 1966, through November 30, 1967, requested the approval of trustee's fees in the sum of $10,000 and attorneys' fees in the sum of $7,460.71 and approval of the allocation of these fees between income and corpus as set forth in the accompanying schedules. Appellant objected to the amounts of the fees sought and to the trustee's allocation thereof as between income and corpus. She requested that testimony be taken to determine what portion of these fees should be charged to income and what portion to corpus.[2] Respondent Smith objected to the allocation of any of the fees to corpus.

At the conclusion of the hearing the court below ordered that all of the trustee's fees and all of the attorneys' fees be charged to income. The court thereafter granted appellant's motion to reopen the proceedings to take additional evidence relative to the nature and extent of the services of the trustee and of the attorneys for which the indicated allowances were sought and the testimony of the successor trustee, Richard Colyear, and his attorney, Robert Schwarz, was taken. However, the court adhered to its former ruling that all of said fees should be charged to income. In outline form appellant's argument is as follows:

### Appellant's Contentions re Allocation of Trustee's Fees.

A. The allocation of trustee's fees is governed by the intention of the testator as expressed in the will.

B. In determining the intention of the testator it is presumed that he had in mind the California statutory and decisional law in effect at the time that the will was written.

1. The case law of California at that time was that ordinary fees are chargeable to income and extraordinary fees are chargeable to corpus.

---

[2] Appellant's sole contention on this appeal relates, not to the amounts, but only to the allocation of the fees.

2. The controlling statute since 1941 has been the Principal and Income Act (incorporated in the Civil Code in 1953) which provides as follows: a. ". . . trustees' compensation for both ordinary and extraordinary services, exclusive of compensation for acceptance or distribution, shall be paid one-half out of income, one-half out of principal, or in such other proportion as the court may direct . . ." (Civ. Code, § 730.15, subd. (1).)[3]

b. "The trustees' compensation upon or for acceptance or distribution of principal, attorneys' fees and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof . . . and other costs (exclusive of trustees' compensation, if any) incurred in connection with purchasing, selling or leasing trust property, or investing or reinvesting principal . . . shall be paid out of principal. . . . " (Civ. Code, § 730.15, subd. (2).)[4]

c. Since the successor trustee's services in this case involved both acceptance of property and sale and reinvestment of property, it was error for the trial court to refuse to make any allocation of trustee's fees to corpus.

### *Appellant's Contentions re Allocation of Attorneys' Fees.*

A. Since the order creating the trust did not authorize the hiring of attorneys (witness that Richard Colyear found it necessary to petition the court for such authority), the allocation of these fees is necessarily governed by the Principal and Income Act as incorporated in the Civil Code.

B. Pursuant to the heretofore cited sections of the Civil Code, attorneys' fees are either allocated between income and corpus in the discretion of the trustee or charged to corpus alone depending upon the nature of the services.

C. Since the attorneys' services in this case involved both acceptance of property and sale and reinvestment of property, it was error for the trial court to refuse to make any allocation of attorneys' fees to corpus.

### *Respondent's Arguments.*

Respondent answers with three arguments: (1) Since the subject of interpretation is the decree of distribution establishing the trust, not decedent's will, any reference to the testator's intention or the law which he is presumed to have incorporated in his will is irrelevant; (2) The trial court properly charged all fees and expenses to income, pursuant to the clause in the trust so directing, under the authority of section 730.04 of the Civil

---

[3]Citations are to section 730 of the Civil Code prior to its repeal by Statutes, 1967, chapter 1508, section 1, operative July 1, 1968.

[4]See footnote 3, *supra.*

Code,[5] which provides that the person establishing the principal may direct the allocation of expenses; (3) The two foregoing arguments apply to attorneys' fees as well as trustee's fees, since the employment of attorneys was authorized by the general provisions of the order setting up the trust; the petition for additional powers was merely a precautionary measure to protect the trustee.

### The Language of the Will Must Be Considered in Ascertaining Testator's Intent.

In the circumstances of the instant case we hold that the testator's intent as expressed in his will is properly to be considered as an aid to interpretation of the order setting up the trust. Respondent cites *Estate of Callnon,* 70 Cal.2d 150 [74 Cal.Rptr. 250, 449 P.2d 186], for the proposition that the decree of distribution controls over the terms of the will where there is no ambiguity in the terms of the decree. However, in *Callnon* the terms of the decree varied from the terms of the will. The court properly held that the decree controlled.

In the case at bench, however, the decree did not purport to interpret or clarify the will, but merely incorporated its provisions verbatim. In such circumstances we feel that the testator's intent as expressed in the will may properly be considered in interpreting the terms of the decree. (*Estate of Page,* 254 Cal.App.2d 702, 709 [62 Cal.Rptr. 740].)[6]

Paragraph FOURTH of the will is specific and unambiguous in its direction that "all sums of money authorized to be deducted under the provisions of Subdivision 2 of said Section THIRD" shall be deducted from income. Thus the determinative question is narrowed to the following: 'What expenditures are "authorized" by the words of Paragraph THIRD that "all taxes, assessments, street improvement bonds, insurance premiums, costs of repairs and other *necessary and proper expenses incurred in the management, care and preservation of said property* and estate or in carrying out the terms of this trust, including a reasonable compensation for [the trustee's] services"? (Italics supplied.)

In construing the words of this section we look to other provisions of the will to see if there is a specific direction or general pattern implying that the life tenants shall be favored over the remaindermen or vice-versa. Absent some indication of a different testamentary intent it is presumed

---

[5] See footnote 3, *supra.*

[6] Of course, if there is no ambiguity in the decree, then we are not at liberty to look to the will to create an ambiguity. (*Estate of Callnon,* 70 Cal.2d 150, 157 [74 Cal.Rptr. 250, 449 P.2d 186].) However, it may be said that ambiguity exists here in that the terms used in the decree are susceptible of either a broad or narrow interpretation.

that the testator did not intend to give preferential benefits either to the life tenants or to the remaindermen with the result that the trustee is required to exercise his discretion so as not to unduly favor one class of beneficiaries over the other. ■ If the testator intends otherwise, a clause is often inserted stating that in case of doubt the rights of one group shall be paramount to the rights of the other.

However, in this case no such clause is found. Nor is there anything in the will suggesting that the rights of the life tenants shall be favored. It is true that the trustee is given discretionary power to invade corpus to provide necessary care in the event of the illness, accident or distress of any beneficiary, but this type of clause is commonly inserted in trusts and the one involved here is even more restrictive than similar clauses often used which allow invasion of corpus for maintenance, support, care and comfort. The clause guaranteeing Margaret Colyear $1,000 a month sets a floor on her income, but does nothing to guarantee the income of the other life tenants. Any suggestion that these two clauses demonstrate a paramount preference for the life tenants on the part of the testator would seem to be refuted by article SEVENTH which reads "Nothing contained in the foregoing paragraphs hereof shall confer upon said Trustee the right, power or authority to pay over to any beneficiary or beneficiaries under said trust, any part of the corpus of said trust property or estate, said beneficiary or beneficiaries being limited to the net income therefrom as hereinabove provided, except as provided in subdivision (c) of Section FOURTH and Section FIFTH hereof."

The crucial words in the paragraph authorizing expenditures, at least as far as the issue in this case is concerned, are the words, "management, care and preservation of said property." Absent any instruction in the will, express or implied, requiring the resolution of doubts in favor of the life tenants, we are constrained to impart to these words their ostensible comprehensive meaning. Certainly investing, selling and exchanging assets, defending the trust against suits, instituting actions to protect the assets, and exercising the rights of shareholders are as much a part of the "management, care and preservation of said property" as are the other ordinary duties involved in the administration of the trust and collection of income.

Appellant argues, however, that we must read into the testator's intent the law at the time of execution of the will and relies heavily on *Estate of Kruce,* 10 Cal.App.2d 426 [51 P.2d 1174], and *Estate of Lopez,* 79 Cal.App.2d 399 [179 P.2d 621], as well as the heretofore cited provisions of the Principal and Income Act.

In *Estate of Kruce, supra,* it is held that the trial court did not err in charging to the corpus of the trust the trustees' compensation and attorneys'

fees for services rendered in closing the trust and distributing the property after the life tenant's death where such services were performed for the benefit of the remaindermen and were not related to the management of the trust for the benefit of the life estate. The will in that case contained no provision indicating that extraordinary or unusual charges should be paid out of income. Accordingly the provision in the will authorizing payment of necessary taxes, costs, and expenses from income was construed to apply only to the ordinary compensation of the trustees and their attorneys.

In *Estate of Lopez, supra,* the appeal was from an order settling the first account of a trustee under a testamentary trust. The allocation of trustee's and attorneys' fees one-half to income and one-half to corpus was assigned as error prejudicial to the rights of the remaindermen. The will provided that income was to be charged with ". . . the reasonable expenses of this trust which shall include the reasonable compensation of said Trustee for its service . . . and the reasonable compensation of any attorney employed by said Trustee in the administration of said trust fund . . ." (P. 401.)

The appellate court affirmed, quoting from *Kruce* and italicizing the sentence in *Kruce* which reads, "The direction of the will would seem to apply to the current compensation and expenses of the trustees and not to anything of an extraordinary nature." (Pp. 402, 403.) It was noted that since this was the first year of the trust, there were substantial extraordinary duties performed by the trustee and the attorneys including acceptance of trust property, determination of questions of corpus and income, settling of tax problems and setting up of accounting machinery.

Appellant's position is not supported by the holdings of these cases or by the provisions of the Principal and Income Act upon which she relies. Moreover, appellant overlooks section 730.04[7] of the Civil Code which provides that ". . . the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses . . . and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this chapter. . . ."

This section of the Principal and Income Act controls the case at bench. Reading the two pertinent paragraphs of the will together, the testator has clearly and expressly provided that *all* expenses incurred in the management, care and preservation of the trust property shall be charged to income. No such provisions were contained in the wills in the *Kruce* or *Lopez* cases.

 The direction in Richard Curtis Colyear's will that expenses in-

[7]See footnote 3, *supra.*

curred in the management, care and preservation of the trust property are to be charged to income applies to attorneys' fees as well as trustee's fees. Appellant contends that the testator cannot possibly have directed the source of payment of attorneys' fees, since the successor trustee had no power derived from the will to hire attorneys, but found it necessary to petition the court for such power. We hold, however, that the trustee did have power to hire attorneys under the terms of the will as incorporated into the decree creating the trust and that the act of petitioning for additional powers was an act of caution rather than an act of necessity.[8]

Paragraph THIRD (1) of the will provides that, "Said Trustee shall be vested with the legal title to, and shall be entitled to and shall have the exclusive possession, control and management of all of said trust property and estate." Paragraph THIRD (2) authorizes payments of expenses incurred in the "management, care and preservation of said property and estate or in carrying out the terms of this trust . . ." Sufficient authorization is therein provided to hire an attorney to perform services necessary to the proper management of the trust. (*Estate of Duffill,* 188 Cal. 536, 555 [206 P. 42].)

We, therefore, hold that all trustee's and attorneys' fees, either ordinary in nature or extraordinary and related to the management, care and preservation of trust property, were properly charged to income pursuant to the directions in decedent's will incorporated into the trust provisions.

While nearly all of the fees incurred during the period covered by the third accounting were for ordinary services or extraordinary services related to the management, care and preservation of trust property, a small portion was for services relating to the *acceptance* of trust property from the probate estate. We find no clause in decedent's will which could be construed as directing that expenses of *acceptance* of trust property are chargeable to income. In the absence of such direction, such fees are

---

[8]The successor trustee so believed at the time he petitioned for the additional powers. In the petition it is alleged ". . . that said powers [(1)-(5) of Article Third] were intended to be comprehensive as indicated by the first paragraph thereof. However, petitioner believes that said powers are not sufficiently specific and that those with whom he may transact business in dealing with trust assets will question whether the trustee's powers of 'possession, control and management' authorizes various acts not specifically set forth in said powers. Petitioner therefore alleges that for efficient administration of the trust estate and in the best interests of the trust estate and the beneficiaries thereof, he should be granted, and authorized to exercise as occasion arise, the following additional powers . . ."

extraordinary in nature and properly chargeable to corpus. (*Estate of Lopez,* 79 Cal.App.2d 399, 402 [179 P.2d 621].)

The trial court found as a matter of fact that the reasonable value of the services performed by the attorneys relating to the acceptance of trust property from the probate estate was $875. Similar findings as to the reasonable value of the corresponding services of the successor trustee were not made. However, the evidence did show that the successor trustee performed some services with regard to the acceptance of property from the probate estate.

■ Rather than to remand the case to the trial court for further findings of fact, we deem it appropriate to exercise our prerogative under Code of Civil Procedure section 909 to make the necessary additional finding of fact. We have a transcript of the evidence taken. The amounts involved are small. Credibility is not in issue as there is no conflict in the evidence. In these circumstances we believe that it is in the best interests of both parties and judicial economy that this litigation be disposed of without further proceedings in the trial court. Therefore, we now find that the reasonable value of the trustee's services performed in connection with acceptance of property from the probate estate was $325.

The order settling the third account is modified so that the fourth paragraph thereof will read as follows:

"Now, Therefore, It Is Hereby Ordered, Adjudged and Decreed that the sum of $15,799.02 for trustee's fees, attorneys' fees, accountants' fees and investment counsel fees and the sum of $121.18 for property taxes charged to principal in Schedule C of said Third Account Current should be charged to income and Richard Calhoun Colyear, as Successor Trustee, be and he is hereby ordered to make an adjustment by appropriate journal entry on the trust books so that the aforesaid items will be charged to income and not to principal."

And the eighth paragraph of said order is modified to provide as follows:

"It Is Further Hereby Ordered, Adjudged and Decreed that the Objections of Margaret A. Colyear Halvorson be and the same are overruled except to the extent that $875 attorneys' fees and $325 trustee's fees are chargeable to corpus and that the objection of Byron O. Smith, as Guardian ad Litem, which related to charging certain items to principal instead of income (which items are first hereinabove referred to in this

order) be and the same is hereby sustained except as to the sum of $1200, which sum is chargeable to principal."

As modified, the order is affirmed.

Roth, P. J., and Compton, J., concurred.